UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| LBM FINANCIAL LLC, | ) | |
| | ) | |
| Appellant, | ) | Civil No. |
| | ) | 09-11668-FDS |
| v. | ) | |
| | ) | |
| SHAMUS HOLDINGS, INC., | ) | |
| | ) | |
| Appellee. | ) | |

# MEMORANDUM AND ORDER

**SAYLOR, J.**

This is an appeal from a final order of the United States Bankruptcy Court for the District of Massachusetts.

This case involves an issue as to the effect of a bankruptcy petition filing on a mortgagee's ability to enforce its rights under Massachusetts law. Appellant LBM Financial, LLC holds a mortgage on real property in South Boston, Massachusetts. Appellee Shamus Holdings, LLC, the petitioner in bankruptcy, owns the property. Massachusetts law limits the time within which a mortgagee may enforce its rights, but provides a procedure by which it may extend the limitations period. Mass. Gen. Laws ch. 260, § 33 (2010). At the time of the filing of the bankruptcy petition by Shamus, LBM's right to enforce the mortgage had not expired under the five-year period provided by the applicable statute of limitations. From September 9, 2003—when the mortgage originally was to mature—to September 9, 2008, LBM took no action to extend the limitations period under § 33. Thereafter, Shamus filed an adversary proceeding to challenge the

mortgage's validity. On August 5, 2009, the Bankruptcy Court entered summary judgment against LBM, finding that the statute of limitations had expired and holding that the mortgage had been discharged. LBM now appeals the Bankruptcy Court's order.

For the reasons set forth below, the order of the Bankruptcy Court will be reversed.

**I.      Background**

On May 9, 2003, Foundry Realty, LLC executed and delivered a mortgage to LBM encumbering real property known as Unit C-1, Foundry Condominium, 314 West Second Street, South Boston, Massachusetts. The mortgage secured a guaranty of a Foundry affiliate's obligations to LBM. The mortgage was dated May 9, 2003 and had a stated term of four months (maturing on September 9, 2003). The guaranty had no term or maturity date.

In November 2004, Foundry granted a mortgage on the property to Pine Banks Nominee Trust in connection with a loan that Foundry received from Pine Banks. After Foundry defaulted under its obligations to Pine Banks, Pine Banks conducted a foreclosure sale of the property. Pine Banks' counsel, Steven A. Ross, prepared a notice of foreclosure that indicated that the foreclosure was subject to all existing encumbrances, including the LBM mortgage.

Following the foreclosure sale, Pine Banks conveyed the property to attorney Ross, Trustee of Beach Street Realty Trust, on September 14, 2005. Neither Pine Banks nor Beach Street paid any of the debt to LBM that was secured by the LBM mortgage.

Shortly thereafter, LBM initiated foreclosure proceedings and scheduled a public auction foreclosure sale of the Foundry Property for July 25, 2007. In response, Pine Banks filed a complaint against LBM in Suffolk Superior Court, seeking an injunction preventing LBM's foreclosure with respect to the property. Pine Banks did not obtain the requested injunctive relief.

On July 19, 2007, Beach Street then conveyed the property to Shamus Holdings, LLC (where Attorney Ross was the managing member) for $1.00. On July 25, 2007—the day of LBM's scheduled foreclosure sale—Shamus filed a voluntary petition under Chapter 11 of the Bankruptcy Code. For more than two years, the automatic stay has prevented LBM from enforcing its rights under the mortgage.

For the five years between September 9, 2003 (the maturity date listed on the mortgage) and September 9, 2008, LBM did not file an affidavit under Mass. Gen. Laws ch. 260, § 33.[1] LBM did file such an affidavit on April 8, 2009.

Shamus filed an amended objection to claim on February 3, 2009, and a motion for summary judgment on March 5, 2009. After a hearing, the Bankruptcy Court entered an order discharging the mortgage along with its memorandum of decision on August 5, 2009.

The Shamus bankruptcy proceeding remains pending.

## II.     Jurisdiction and Standard of Review

This Court has jurisdiction to hear appeals from final judgments, orders, and decrees pursuant to 28 U.S.C. § 158(a)(1) (2006). The Bankruptcy Court's findings of fact are reviewed for clear error and its conclusions of law are reviewed *de novo*. *See In re Hill*, 562 F.3d 29, 32 (1st Cir. 2009). This Court "may affirm, modify, or reverse [a Bankruptcy Court's order] or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. The Bankruptcy Court's Order was a final order, and there are no disputed questions of fact raised on appeal.

---

[1] Pursuant to an agreement with the borrower, the maturity date of the loan supported by the guaranty, which was in turn secured by the mortgage, was extended to April 9, 2004. The maturity date on the mortgage itself, however, was not updated within the applicable time frame.

3

**III.     Analysis**

LBM contends that the order finding that the mortgage is discharged should be reversed because the Bankruptcy Court (1) erroneously concluded that the limitations period for enforcement of the LBM mortgage had expired because it failed to provide for the tolling of that limitations period under § 108(c) of the Bankruptcy Code; (2) erroneously failed to adhere to the principle that the rights and priorities of creditors are fixed as of the filing of the bankruptcy petition and are protected for the duration of the bankruptcy proceeding; (3) erroneously failed to find that LBM extended the applicable limitations period under Massachusetts law; and (4) mistakenly declined to apply its equitable authority to reinstate the mortgage (or otherwise estop Shamus from claiming the benefits of the discharge of the mortgage) in conformance with Massachusetts law, which permits the reinstatement of a mistakenly discharged mortgage.

LBM raised nearly identical questions in an appeal to the Bankruptcy Appellate Panel for this Circuit, which found in its favor. *See In re 201 Forest Street, LLC*, 422 B.R. 888 (B.A.P. 1st Cir. 2010).[2]  As in the present case, *201 Forest Street* involved the question of whether a mortgage held by LBM should be discharged by the passage of time and Mass. Gen. Laws ch. 260, § 33, despite a bankruptcy stay.  422 B.R. at 889-90.  The BAP reversed the Bankruptcy Court, stating that "[b]ecause the debtor's bankruptcy filing prevented LBM from enforcing its

---

[2] This Court is not bound by the decisions of a BAP, although such decisions may have persuasive authority.  *See In re Virden*, 279 B.R. 401, 409 n.12 (Bankr. D. Mass. 2002) (BAP decisions can have no more weight than that of a district court).  *See also Bank of Maui v. Estate Analysis, Inc.*, 904 F.2d 470, 472 (9th Cir. 1990) ("it must be conceded that BAP decisions cannot bind the district courts"); *Specker Motor Sales Co. v. Eisen*, 300 B.R. 687 (W.D. Mich. 2003), *aff'd on other grounds*, 393 F.3d 659 (6th Cir. 2004); *In re Pepmeyer*, 273 B.R. 782, 785 (N. D. Iowa 2002); *In re Cormier*, 382 B.R. 377, 408 (Bankr. W.D. Mich. 2008) ("[BAP decisions] are not generally binding within the circuit, [or] across district lines"); *In re Carrozzella & Richardson*, 255 B.R. 267, 272-73 (Bankr. D. Conn. 2000) (BAP opinions should be given no more precedential weight than a district court).

rights by commencing a civil action to foreclose its mortgage, we hold that § 108(c) operates to extend the time within which LBM can initiate such an action." *Id.* at 895-96. The BAP reached that conclusion notwithstanding the possibility that LBM might have extended the length of time its mortgage remained viable under § 33. *Id.* The Court finds the reasoning of the BAP persuasive, and will follow it here.

The starting point is the statutory framework. The Massachusetts Obsolete Mortgages Statute, Mass. Gen. Laws ch. 260, § 33, provides:

> A power of sale in any mortgage of real estate shall not be exercised . . . *nor proceeding begun for foreclosure* of any such mortgage after the expiration of . . . in the case of a mortgage in which the term or maturity date of the mortgage is stated, 5 years from the expiration of the term or from the maturity date, unless an extension of the mortgage, or an acknowledgment or affidavit that the mortgage is not satisfied, is recorded before the expiration of such period . . . . Upon the expiration of the period provided herein, the mortgage shall be considered discharged for all purposes without the necessity of further action by the owner of the equity of redemption or any other persons having an interest in the mortgaged property . . . .

(emphasis added).

Also relevant is § 108(c) of the Bankruptcy Code, which provides:

> [I]f *applicable nonbankruptcy law*, an order entered in a nonbankruptcy proceeding, or an agreement *fixes a period for commencing or continuing a civil action in a court* other than a bankruptcy court on a claim against the debtor . . . *and such period has not expired before the date of the filing of the petition, then such period does not expire* until the later of--
>
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>
> (2) 30 days after notice of the termination or expiration of the stay under section 362 . . . of this title . . . with respect to such claim.

11 U.S.C. § 108(c) (2006) (emphasis added).

Finally, § 362(b)(3) of the Bankruptcy Code provides:

> The filing of a [bankruptcy] petition . . . *does not operate as a stay* under subsection (a) of this section, *of any act to perfect, or to maintain or continue the perfection of, an interest in property* . . . .

11 U.S.C. § 362(b)(3) (2006) (emphasis added).

Here, as in *201 Forest Street*, the substance of the Bankruptcy Court's ruling was that LBM was required to obtain an extension under the Obsolete Mortgages Statute because the automatic stay of the Bankruptcy Code did not preclude such an extension. *See In re Shamus Holdings, LLC*, 409 B.R. 598, 604-05 (Bankr. D. Mass. 2009); *In re 201 Forest Street, LLC*, 404 B.R. 6, 14-15 (Bankr. D. Mass. 2009), *rev'd*, 422 B.R. 888 (B.A.P. 1st Cir. 2010). According to the Bankruptcy Court, because LBM did not obtain an extension within the five-year limitations period granted by the statute, its mortgage should be discharged. *See Shamus Holdings*, 409 B.R. at 603.

That position appears to be incorrect. As the BAP noted in *201 Forest Street*, the fact that LBM was *permitted* to extend its mortgage under federal bankruptcy law does not mean it was *obligated* to do so. 422 B.R. at 892. The inference of such an obligation is simply not supported by law.

Even assuming that LBM could have filed an affidavit under § 362(b)(3) "to perfect, maintain, or continue the perfection of" its property interest and thus extend the five-year period under the Obsolete Mortgages Statute—a matter that is of some doubt[3]—that would only have extended the period in which LBM could bring a civil action. And that period would have been tolled in any event by the bankruptcy proceedings.

---

[3] *See 201 Forest Street*, 422 B.R. at 893 n.7 (summarizing ambiguity as to whether § 33 extensions fall within scope of § 362(b)(3)). The Court need not decide this question here.

The Obsolete Mortgages Statute sets the period in which a mortgagee may act to enforce its mortgage by, among other things, beginning a foreclosure proceeding. Mass. Gen. Laws ch. 260, § 33. Undoubtedly, this constitutes commencement of a "civil action" for the purposes of § 108(c). *See* Mass. Gen. Laws ch. 212, § 3 (2010) ("The [Superior Court] shall have exclusive original jurisdiction of *civil actions for the foreclosure of mortgages . . . .*") (emphasis added). It is equally clear that the five-year period provided by § 33 had not yet expired at the time of the filing of the bankruptcy petition. The Obsolete Mortgages Statute thus falls squarely within the terms of § 108(c), and the five-year period within which LBM may bring a foreclosure action would be tolled by the bankruptcy automatic stay. Extending the mortgage under § 33—while permitted—is thus not required to preserve LBM's rights, as it would merely lengthen a period that has already been frozen.

This position is supported by the case law and the plain meaning of the relevant statutes. *See 201 Forest Street,* 422 B.R. at 892-95. Although the Bankruptcy Court is correct that nothing in federal law would have prevented LBM from extending its mortgage under § 33, "the observation . . . misses the point." *Id.* at 895. "The question is not whether the creditor was prevented from taking action to *extend* the relevant enforcement period regarding its lien, but rather whether the creditor was prohibited from taking action to *enforce* its rights." *Id.* (emphasis original). "That another alternative to preserve LBM's mortgage *may* have been available matters not [because] its option to initiate suit was stayed by [Shamus'] bankruptcy." *Id.* (emphasis original). Accordingly, LBM's ability to reinforce its mortgage was preserved.

This result is not only legally correct, but it is also supported by common sense. The Obsolete Mortgages Statute has the obvious purpose of "clear[ing] titles of old and obsolete

7

mortgages." *Town of Pembroke v. Gummerus*, 2008 WL 2726524, *9 (Mass. Land Ct. Jul. 15, 2008). The mortgage at issue here is clearly neither obsolete nor inactive. LBM indicated its interest in enforcing the mortgage in 2007—well within the § 33 statutory period—when it commenced foreclosure proceedings on the property, and its scheduled sale was forestalled only by the acquisition of title by Shamus and by the bankruptcy proceeding.[4] Since then, LBM has been prevented from asserting its claim by the bankruptcy proceeding, which remains pending. As the legislative history to the 1994 Bankruptcy Code amendments suggests, §§ 108(c) and 362(b)(3) were intended to preserve such claims, not destroy them. *See* S. Rep. No. 103-168, at 50 (1993) (section 362 amendments creating a stay exception for continuing or perfecting property interests was intended to "maintain a secured creditor's position as it was as of the commencement of the [bankruptcy] case"). Indeed, to hold otherwise would be to invite abusive bankruptcy proceedings and permit otherwise-valid mortgages to become unenforceable.

In summary, LBM's right to commence a civil action to enforce its mortgage until 30 days after the conclusion of the automatic stay has been preserved.

**IV.    Conclusion**

For the foregoing reasons, the Order of the Bankruptcy Court dated August 5, 2009, is REVERSED.

**So Ordered.**

/s/ F. Dennis Saylor<br>
F. Dennis Saylor IV<br>
United States District Judge

---

[4] As noted, Shamus acquired title to the property for $1 and filed for bankruptcy on the same day LBM's foreclosure sale was scheduled to occur.

Dated: September 28, 2010